# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| RANDY AND MARY WILLIAMS  and<br>LARRY AND LINDA LAKE, | ) | CASE NO.: |
| | ) | |
| Plaintiffs, on behalf of a Putative Class | ) | |
| | ) | CLASS ACTION |
| v. | ) | |
| | ) | COMPLAINT |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | 1) Violation of GA UDTPA |
| d/b/a NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY, AMERICAN INTERNATIONAL | ) | 2) Unjust Enrichment |
| GROUP, INC. (AIG), HEALTHEXTRAS, INC., | ) | |
| HEALTHEXTRAS, LLC, HEALTHEXTRAS | ) | 3) Violation of Good Faith and Fair |
| BENEFITS ADMINISTRATORS, INC., | ) |     Dealing; |
| CATAMARAN HEALTH SOLUTIONS, LLC, | ) | 4) Conspiracy; Conspiracy; |
| f/k/a CATALYST HEALTH SOLUTIONS, INC., | ) | 5) GA RICO |
| HEALTHEXTRAS INSURANCE AGENCY, INC.,) | | |
| ALLIANT INSURANCE SERVICES, INC., f/k/a | ) | 6) Punitive Damages; |
| DRIVER ALLIANT INSURANCE SERVICES, | ) | 7) Injunctive Relief |
| INC., ALLIANT SERVICES HOUSTON, INC., | ) | |
| f/k/a JLT SERVICES CORPORATION, | ) | |
| ALLIANT INSURANCE SERVICES | ) | |
| HOUSTON, LLC, f/k/a CAPITAL RISK, LLC, | ) | |
| f/k/a JARDINE LLOYD THOMPSON, LLC, and, | ) | DEMAND FOR JURY TRIAL |
| VIRGINIA SURETY  COMPANY, INC. | ) | |
| | ) | |
| Defendants. | ) | |

Now come the Plaintiffs, Randy and Mary Williams, Larry and Linda Lake, on behalf of

themselves and all other similarly situated residents of the State of Georgia and allege as follows:

1.      Plaintiffs, Randy and Mary Williams, are residents of Fulton County, Georgia, and

Larry and Linda Lake, residents of Fayette County, Georgia, who purchased and entered into

insurance contracts, advertised under the name HealthExtras, with the Defendants, National Union

Fire Insurance Company of Pittsburgh, PA, d/b/a National Union Fire Insurance Company, a

member of American International Group, Inc. (AIG), HealthExtras, Inc., HealthExtras Benefits

Administrators, Inc., Catamaran Health Solutions, LLC, f/k/a Catalyst Health Solutions, Inc., HealthExtras Insurance Agency, Inc., HealthExtras, LLC, Alliant Insurance Services, Inc., f/k/a Driver Alliant Insurance Services, Inc., Alliant Services Houston, Inc., f/k/a   JLT Services Corporation, Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, and Virginia Surety Company, Inc., that purportedly provided them with a One Million Dollar ($1,000,000.00) lump sum Accidental Permanent and Total Disability Benefit in the event that the named insured became permanently disabled and could not return to work, underwritten by National Union Fire Insurance Company of Pittsburgh, PA, and a Two Thousand Five Hundred ($2,500.00)   Emergency Accident and Sickness Medical Expense Benefit underwritten by Virginia Surety Company, Inc.

      2.      Defendant National Union Fire Insurance Company of Pittsburgh, PA, d/b/a National Union Fire Insurance Company, is a member of American International Group, Inc. (AIG), (hereinafter National Union), was and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has done business at all relevant times in the State of Georgia, with its principal office located at 175 Water Street, 18th Floor, New York, NY 10038, and with its registered agent located in Pennsylvania, namely, Corporation Service Company, 2595 Interstate Drive, Harrisburg, PA 17710. National Union has a local agent for service of process, namely, Corporation Service Company, located at 40 Technology Parkway South, #300, Norcross, GA 30092. Upon information and belief, Defendant National Union, at all times relevant to this action, was licensed as an insurance company and/or underwriter in the State of Georgia.

      3.      Defendant American International Group, Inc., d/b/a AIG Group Insurance Trust

-2-

for the Account of HealthExtras, (hereinafter "AIG") is a foreign corporation with its principal place of business located at 2 Peach Tree Hill Road, Livingston, New Jersey with a registered agent located in Delaware, namely United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.   In Georgia, the entity underwent automated administrative dissolution on July 22, 1995. It is not authorized to transact business in the State of Georgia.   Defendant American International Group, Inc., d/b/a AIG Group Insurance Trust for the Account of HealthExtras, at all times relevant to this action, conducted business in the State of Georgia.

4.     Defendant HealthExtras, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of Georgia, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Defendant HealthExtras, Inc., has asserted that on October 1, 2008, it changed its name to Catalyst Health Solutions, Inc., and that therefore, it no longer exists. However HealthExtras does continue to exist and conducts business under the name HealthExtras as evidenced by correspondence dated September 19, 2013 to the Plaintiffs, Randy and Mary Williams, under the name HealthExtras.   Defendant HealthExtras, Inc. has never been licensed or authorized by the Georgia Secretary of State to conduct business in Georgia or the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

5.     Defendant HealthExtras Benefits Administrators, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of Georgia, with its registered agent located in Delaware, namely; The

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  HealthExtras Benefits Administrators, Inc., is a subsidiary of HealthExtras, Inc., and/or Catalyst Health Solutions, Inc., and has never been licensed or authorized by the Georgia Secretary of State to conduct business in Georgia or the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

6.      Defendant, Catamaran Health Solutions, LLC (Catamaran) is the corporate successor to Catalyst Health Solutions, Inc. (Catalyst) and is a limited liability company organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of Georgia, with its registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Catalyst has asserted that it is the corporation formerly known as HealthExtras, Inc. Upon information and belief, Defendant Catamaran has never been licensed or authorized by the Georgia Secretary of State to conduct business in Georgia or the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia. Despite its representations otherwise, Catamaran has and continues to operate under its original trade name HealthExtras for the purposes of marketing and providing administrative services for the policies that are the subject of this Lawsuit until August 1, 2012 when it divested from itself a wholly owned subsidiary known as HealthExtras, LLC.  Upon information and belief, this transfer was conducted in bad faith in order to hide assets and avoid liability in response to the filing of a similar Class Action Lawsuit filed in the Eastern District of North Carolina in 2012, *Petruzzo v. National Union Fire Insurance Company of Pittsburgh, PA, et al., 5:12-cv-113-FL*.

7.      Defendant HealthExtras Insurance Agency, Inc., was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of Georgia, with its principal office located at 2273 Research Boulevard, 2nd Floor, Rockville, MD 20850, with a registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Upon information and belief, HealthExtras Insurance Agency, Inc. has never been licensed or authorized by the Georgia Secretary of State to conduct business in Georgia, nor is it authorized by the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

8.      HealthExtras, LLC, is a limited liability company organized and existing under the laws of the State of Delaware and was a former wholly owned subsidiary of Catalyst Health Solutions, Inc., and was divested from the merged entity, Catamaran, in 2012.  HealthExtras, LLC has a registered agent located in Delaware, namely, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Upon information and belief, HealthExtras, LLC currently administers, collects and allocates premiums for the insurance program complained of herein.

9.      Hereinafter, the Defendants named as HealthExtras, Inc., HealthExtras Benefits Administrators, Inc., Catamaran Health Solutions, LLC, f/k/a Catalyst Health Solutions, Inc., and HealthExtras Insurance Agency, Inc., and HealthExtras, LLC at times will collectively be referenced as HealthExtras.

10.      Defendant Alliant Insurance Services Inc., f/k/a Driver Alliant Insurance Services Inc., was and is a corporation organized and existing under the laws of the State of Delaware and

has done business at all relevant times in the State of Georgia, with its principal office located at 1301 Dove Street, Suite 200, Newport Beach, CA 92660, with a registered agent located in Georgia, namely Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.  Alliant Insurance Services Inc., f/k/a Driver Alliant Insurance Services Inc., is licensed with the Georgia Secretary of State to conduct business in Georgia and the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

11.     Defendant Alliant Services Houston, Inc., f/k/a JLT Services Corporation, was and is a corporation organized and existing under the laws of the State of New York and has done business at all relevant times in the State of Georgia, with its principal office located at 55 Realty Drive, Suite 200, Cheshire, CT 06410, with a registered agent located in Georgia, namely, Corporation Service Company, 40 Technology Parkway, South, Suite 300, Norcross, GA  30092. Alliant Services Houston, Inc., f/k/a JLT Services Corporation, is licensed with the Georgia Secretary of State to conduct business in Georgia and the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

12.     Defendant Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, was and is a corporation organized and existing under the laws of the State of Delaware and has done business at all relevant times in the State of Georgia, with its principal office located at 5847 San Felipe, Suite 2750, Houston, TX 77057, with a registered agent located in Georgia, namely, Corporation Service Company located at 40 Technology Parkway South, Suite 300, Norcross, GA  30092.  Alliant Insurance Services Houston, LLC,

f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, is licensed with the Georgia Secretary of State to conduct business in Georgia and the Georgia Department of Insurance to conduct insurance transactions in Georgia, including the marketing and sale of insurance products in Georgia.

13.     Hereinafter, the Defendants named as Alliant Insurance Services Inc., f/k/a Driver Alliant Insurance Services Inc., Defendant Alliant Services Houston, Inc., f/k/a JLT Services Corporation, and Defendant Alliant Insurance Services Houston, LLC, f/k/a Capital Risk, LLC, f/k/a Jardine Lloyd Thompson, LLC, will collectively be referenced as "Alliant".

14.     Defendant, Virginia Surety Company, Inc. (hereinafter Virginia Surety) was and is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 175 West Jackson Boulevard, 11th Floor, Chicago, IL, 60604. Virginia Surety has a local agent for service of process, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross, GA   30092.

## Jurisdiction, Venue and Choice of Law

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, at least one Class Member is a citizen of a state different from the corporate domiciles of the Defendants.

16.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly

more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity herein; and

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

(a)     Questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

(b)     A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

(c)     The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and,

(d)     There are no unusual difficulties foreseen in the management of this class action.

17.     The Defendants, collectively and individually, at all relevant times herein conducted substantial business in this district, many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

18.     The Court has personal jurisdiction over all the Defendants, who have at least minimum contacts with the State of Georgia because the Defendants conduct business there and have availed themselves of Georgia markets through its promotion, sales and marketing efforts, as well as the Defendants' issuance of insurance policies and collection of premiums within Georgia to and from residents of Georgia.

-8-

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

20.     Georgia's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amendment, Section 1, and the Full Faith and Credit Clause, Article IV, Section 1, of the U.S. Constitution. Georgia has a significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs, thereby creating state interests that ensure that the choice of Georgia state law is not arbitrary or unfair.

21.     The Defendants' actions and omissions of which Plaintiffs complain were directly targeted at residents of Georgia and are in derogation of the State of Georgia's interest in the regulation of products sold and administered within the state.  Georgia has an interest in regulating the Defendants' conduct in marketing, selling, collecting premiums for and administering insurance products within its borders to its residents.

22.     Georgia residents were the target of these Defendants' marketing, selling, collecting premiums for and administration of insurance, and the Defendants' alleged misconduct injured and affected Plaintiffs and the Class Members residing in Georgia.

23.     Accordingly, the application of Georgia's laws to the Plaintiffs and  proposed Class Members is appropriate under Georgia's choice of law rules because Georgia has significant contacts to the claims of the Plaintiffs and all members of the proposed Class, and Georgia has a greater interest in applying its laws here than any other State.

24.     Venue in the United States District Court for the Northern District of Georgia is proper because Defendants transact business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

25.    Georgia's substantive laws apply to the proposed Class, as defined herein, because Plaintiffs properly brings this Class Action Complaint in this District alleging violations of Georgia law, as well as federal statutory claims.

## **Preliminary Allegations**

26.    This matter is governed by the law of the State of Georgia and the United States of America.   This matter is not governed by ERISA 29 U.S.C. Section 1001, *et seq.*

27.    HealthExtras, National Union, Alliant, AIG and Virginia Surety are at times referred to collectively as "Defendants".  This action arises from the wrongful conduct of the Defendants toward the Plaintiffs and others similarly situated in the State of Georgia and the United States of America, including but limited to the following: (a) the illegal selling and underwriting of group insurance to consumers who were not members of any lawful, blanket group for which the sale of such an insurance product could be authorized; (b) the false and deceptive advertising, solicitation, sale, and post-sale marketing of disability insurance that is illegal under Georgia law; (c)  the creation of "trusts" in which to "place" this insurance to attempt to avoid state regulations and laws; (d) the calculation and collection of excessive premiums or "fees" charged for this illegal product; (e) conspiracy among the defendants  to create a sham organization operating under the name HealthExtras for the purpose of avoiding the State of Georgia's insurance regulations and laws; (f) conspiracy among the defendants to create a sham organization operating under the name HealthExtras for the purpose of   charging excessive illegal premiums for a worthless disability product; (g) conspiracy among the defendants  to create a sham organization operating under the name HealthExtras for the purpose of concealing from the public and the State of Georgia the true nature of the sham organization known as HealthExtras;

and (e) other misconduct.

28.     These Defendants have engaged in activities that violate the statutory and common law of the State of Georgia and have transacted business within the State of Georgia.

29.     This Complaint is based upon claims by Plaintiffs, Randy and Mary Williams, and Larry and Linda Lake, and others similarly situated against Defendants for various causes of action. The Causes of Action that are Class Allegations include the following: (a)Violation of the Georgia Deceptive Trade Practices Act; (b) Unjust Enrichment (c) violation of the Covenant of Good Faith and Fair Dealing; (d) Civil Conspiracy; (e) violation of  O.C.G.A. 16-14-1 *et. seq.* (GA RICO); (f) Punitive Damages; and (g) Injunctive Relief.  These tortuous, unfair, and deceptive acts were committed by Defendants before the sale, during the course of the sale, and after the sale of the disability product known as HealthExtras to the Plaintiffs and all other similarly situated Georgia residents, and these wrongful and illegal acts are continuing.

30.     Defendants acted, and continue to act in conspiracy and in concert with each other in connection with the claims alleged herein. Defendants are jointly and severally liable for the wrongful conduct alleged herein.

31.     This case seeks disgorgement and return of all illegal premiums, treble and punitive damages, as well as injunctive and other equitable relief, attorneys' fees and costs, interest, and other damages.

## Class Allegations

32.     Plaintiffs, Randy and Mary Williams, and Larry and Linda Lake, bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a Class of individual residents of the State of Georgia who owned, purchased or

paid premiums for disability insurance coverage with Defendants for disability insurance product known as "HealthExtras" from April 1, 2000 through the date of class certification.

33.     Plaintiffs, Randy and Mary Williams, and Larry and Linda Lake, bring this action as class representatives to recover damages and/or refunds from these Defendants for (a)Violation of the Georgia Deceptive Trade Practices Act; (b) Unjust Enrichment (c) violation of the Covenant of Good Faith and Fair Dealing; (d) Civil Conspiracy; (e) violation of   O.C.G.A. 16-14-*1 et. seq.* (GA RICO); (f) Punitive Damages; and (g) Injunctive Relief.

34.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

35.     The Plaintiffs Class is defined and proposed as follows:

All individual persons in the State of Georgia who own, owned and/or purchased disability insurance coverage and/or paid premiums for disability insurance known as HealthExtras with the Defendants from April 1, 2000 through the date of class certification.   Collectively, these persons will be referred to as the "Class".

36.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

37.      Excluded from the Plaintiffs Class are:

(a)     Defendants and any entities in which any Defendant has a controlling interest;

(b)     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of any

-12-

Defendants;

(c)     The Judge to whom this case is assigned and any member of the Judge's

immediate family and any other judicial officer or employees assigned to this case;

(d)     Claims for personal injury, wrongful death and/or emotional distress;

(e)     Actual identifiable claims for disability benefits that have already arisen

that may be payable under the terms of said disability insurance policies;

(f)     Any attorneys representing the Plaintiffs or the Class;

(g)     All governmental entities; and,

(h)     Any person having entered into a release of claims with the Defendants

concerning these allegations prior to the certification of this class.

38.     Numerosity: Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that

their individual joinder is impracticable. The exact number or identification of the Class Members

is presently unknown, but it is believed that there are over 100 and most likely thousands of Class

Members. The identity of the Class Members is ascertainable.   In addition to registration rolls

maintained by the Defendants, the Class Members may be located and informed of the pendency

of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or

other means.

39.      Predominance of Common Questions. Fed. R. Civ. P. 23(a)(2), 23(b)(3). Common

questions of law and fact exist as to all the Class Members and predominate over questions

affecting only individual Class Members. These common questions include the following:

(a)     Whether the Defendants falsely advertised the disability product known as

HealthExtras;

(b)     Whether Defendants sold disability policies and collected premiums for said insurance policies that were illegal under the law of the State of Georgia;

(c)     Whether Defendants illegally sold disability policies and collected premiums for those policies to a group of Georgia residents that was not and could not be a legal "blanket group" under Georgia law;

(d)     Whether Defendants wrongfully collected and increased premiums for those illegal policies;

(e)     Whether any Defendant or several of the Defendants knew or should have known that selling and collecting premiums for the subject policies was illegal   pursuant to applicable Georgia law and in derogation of the State of Georgia's interest in regulating the sale of insurance within its borders;

(f)     Whether the Defendants have been unjustly enriched at the expense of Plaintiffs and the Class Members;

(g)     Whether Plaintiffs and the Class Members suffered any injury that was proximately caused by the unlawful acts alleged herein;

(h)     Whether the Defendants acted in conspiracy with each other to perform the illegal acts described herein; and,

(i)     Whether Plaintiffs and the Class Members are entitled to recover damages proximately caused by the alleged unlawful conduct, including actual damages consisting of restitution of premiums collected for the illegal policies, treble damages recoverable under Georgia RICO, O.C.G.A. Section 16-14-1, *et. seq.*, punitive damages, interest, attorneys' fees, filing fees, and reasonable costs of suit.

40.     Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of claims of all of the Members of the Class, all of whom owned or purchased disability insurance coverage or paid premiums for disability coverage through a program known as HealthExtras from April 1, 2000 through the present date.

41.     Adequacy. Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class, they agree to participate in discovery and attend any Court hearings required of them. Plaintiffs are represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as Class Counsel. Class Counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

42.     Superiority. Fed. R. Civ. P. 23(b)(3). The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   The class, as defined herein, is ascertainable from the Defendants' records or from records which the Defendants have access and control.

## Historical Background and Factual Allegations

43.      In the late 1990s, Defendant HealthExtras established strategic marketing relationships with six of the nation's largest VISA and MasterCard issuing banks for access to their credit card and other customers to market a long term disability insurance product to persons in Georgia and throughout the United States of America.

44.      Defendant HealthExtras initially engaged Reliance National Insurance Company to underwrite its disability coverage product and was aware that any underwriter would necessarily be required to comply with insurance regulation among the various fifty (50) states.

45.      In 1999 or 2000, Plaintiffs, Randy and Mary Williams, and Larry and Linda Lake, received marketing materials from Defendant HealthExtras, which were forwarded to them in mailings from his MasterCard credit card issuer.

46.      Prior to the issuance of the marketing materials, Defendant HealthExtras had retained and utilized the likeness of "Superman" actor, Christopher Reeve, to be the face of its marketing campaign.   The Williams Plaintiffs and the Lake Plaintiffs, like many Americans, were aware that Christopher Reeve had become paralyzed as a result of an equestrian accident.

47.      Upon information and belief, after expressing an interest in the HealthExtras program, Plaintiffs received a letter in 1999 or 2000 from Defendant HealthExtras, signed by a Director of Client Services that included the following statements:

> Enclosed please find the HealthExtras program description you requested. Because lives change in an instant, like Christopher Reeve's, HealthExtras was created to provide families with financial security should the unthinkable happen.

> $1,000,000 cash payment if you are permanently disabled due to an

accident.   And as a HealthExtras member, you have two tax-free option: a $1,000,000 lump sum cash payment or a $250,000 cash payment plus $5,000 per month for 20 years.

$2,500 a year in reimbursements for coinsurance and deductibles for healthcare expenses when you are traveling.

48.     The HealthExtras benefit program touted and included in the "coverage" a One Million Dollar ($1,000,000.00) benefit in the event that either of the named insured Plaintiffs became permanently disabled as a result of an accident.

49.     This mail solicitation from Defendant HealthExtras constituted direct-to-consumer marketing material(s) intended to induce the Plaintiffs to purchase and retain the specified disability insurance, wherein Defendant HealthExtras specifically offered the Plaintiffs the opportunity to purchase disability insurance.

50.     Defendant HealthExtras' written solicitation of the Williams Plaintiffs and the Lake Plaintiffs was the typical HealthExtras initial mailing solicitation, offering this disability insurance to certain "targeted" credit card customers who held credit cards with several of the nation's largest VISA and MasterCard issuing banks, as well as American Express customers.

51.     The Williams and the Lake Plaintiffs, respectively, enrolled in Defendant HealthExtras' "benefit program" and agreed to pay an initial monthly premiums which were upon information and belief, $14.50 per month, which appeared as charges/debits on their credit/debit card statement.

52.     Upon information and belief, Defendant HealthExtras accepted the respective named Plaintiffs enrollment in 2000 by letter from the Director, Member Services, that advised the Plaintiffs that "you have armed yourself with one of the most exciting and affordable disability

plans found anywhere in America today." Additionally, upon information and belief, the acceptance letter included a photograph of Christopher Reeve and a message purportedly from him that stated "[b]ecause lives can change in an instant, as mine did, you should have the additional security for yourself and your family that HealthExtras can provide."

53.     The HealthExtras disability policy purports to have two primary "benefits". First, the Accidental Permanent and Total Disability insurance is advertised and purported to provide "coverage" of a One Million Dollar ($1,000,000.00) benefit in the event that the "member" becomes permanently disabled as a result of an accident, and second, an Emergency Accident and Sickness Medical Expense Benefit that is advertised and purported to cover up to Two Thousand Five Hundred ($2,500.00) in medical expenses if the "member" suffers and accident or sickness while away from home.

54.     The Plaintiffs' respective One Million Dollar ($1,000,000.00) Accidental and Permanent Total Disability Benefit was first underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, a successor underwriter to Reliance National Insurance. Then, on January 1, 2005, the underwriter was changed again to Defendant National Union.

55.     The Plaintiffs' respective Two Thousand Five Hundred ($2,500.00) Emergency Accident and Sickness Medical Expense Benefit has been underwritten from by Defendant, Virginia Surety from the date of their enrollment to present.

56.     On September 19, 2013, in response to a request by Randy and Mary Williams, and similarly in response to a request from the Lake Plaintiffs, HealthExtras forwarded the Plaintiffs an "Accident Protection Plan Program Summary" and a "Description of Coverage" of their HealthExtras disability policy. In each instance, the "Description of Coverage" indicated that it

was a "brief description of coverage available under policy series C11695DBG" and that "[i]f any conflict should arise between the contents of this Description of Coverage and the Master Policy SRG 9540519 or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases."

57.     The Williams Plaintiffs and the Lake Plaintiffs were not and have never been provided with a copy of policy series C11695DBG nor of Master Policy SRG 9540519.   Further, policy series C11695DBG nor Master Policy SRG 9540519 have never been provided to a lawful blanket group in Georgia. Upon information and belief, no other member of the proposed class has ever been provided those documents either.   These documents contain extremely restrictive, conflicting and confusing terms and exclusions which render any disability insurance "coverage" virtually worthless to consumers and are in sharp contrast and directly contradict the marking material developed and delivered to Georgia residents by the Defendants.

58.     The Williams Plaintiffs and the Lake Plaintiffs have made payments via their credit/debit card for the HealthExtras accidental disability premiums from 2000 through the present for the accidental disability policy sold to them by Defendant, HealthExtras.

59.     Upon information and belief, at some time between 2003 and 2005, the Defendants unilaterally increased Randy and Mary Williams' monthly premium and the Lake's premium.

60.   The aforementioned premium increase was made without prior approval as required under Georgia law.

61.     Beginning in 2009, Defendant again increased the premium to $29.90 per month without any approval in violation of Georgia law.

-19-

**The HealthExtras Disability Policy is Illegal Under Georgia Law**

62.     In Georgia, a blanket accident health or disability policy may only be issued to an association to cover a group of members or participants defined by reference to specified hazards incident to an activity or operation sponsored or supervised by the association

63.     Blanket group polices differ from individual policies in that a singlemaster policy is issued to a group or association, as opposed to the individual person being insured.   Thus, the group or association is the actual policyholder.   Each member of the group or association that is provided coverage under the master policy is issued a Certificate of Insurance that summarizes the coverage terms and explains the individual's rights under the master policy.

64.     Georgia Insurance Code O.C.G.A. § 33-30-1(a)(1)-(7) defines eligible blanket insurance as follows:

> (a)   "Group accident and sickness insurance" is that form of accident and sickness insurance covering the groups of persons listed in paragraphs (1) through (7) of this subsection, with or without one or more members of their families or one or more of their dependents or covering one or more members of the families or one or more dependents of persons in such groups, and issued upon the following basis:
>
> (1)   Under a policy issued to an employer or trustees of a fund established by an employer, who shall be deemed the policyholder, insuring at least two employees of such employer for the benefit of persons other than the employer.   As used in this paragraph, the term "employees" includes the officers, managers, and employees of the employer; the individual proprietor or partners, if the employer is an individual proprietor or partnership; the officers, managers and employees of subsidiary or affiliated

-20-

corporations; and the individual proprietors, partners, and employees of individuals and firms, if the business of the employer and such individual or firm is under common control through stock ownership, contract, or otherwise. The term may include retired employees. A policy issued to insure employees of a public body may provide that the term "employee" shall include elected or appointed officials;

(2) Under a policy issued to an association, including a labor union, which shall have a constitution and bylaws and which has been organized and is maintained in good faith for purposes other than that of obtaining insurance, insuring at least ten members, employees, or employees of members of the association for the benefit of persons other than the association or its officers or trustees. As used in this paragraph, the term "employees" may include retired employees:

(3) Under a policy issued to the trustees of a fund established by two or more employers in the same industry, by one or more labor unions, by one or more employers and one or more labor unions, or by an association as defined in paragraph (2) of this subsection, which trustees shall be deemed the policyholder, to insure not less than ten employees of the employers of members of the union or of such association or of members of such association for the benefit of persons other than the employers or other unions or such associations. As used in this paragraph, the term "employees" includes the officers, managers, and employees of the employer and the individual proprietor or partners, if the employer is an individual proprietor or partnership. The term may include retired employees. The policy may provide that the term "employees" shall include the trustees or their employees, or both, if their duties are principally connected with such trusteeship;

-21-

(4)    Under a policy issued to any person or organization to which a policy of group life insurance may be delivered in this state, to insure any class or classes of individuals that could be insured under such group life policy;

(5)    Under a policy issued to a creditor, or to a trustee or agent appointed by two or more creditors, which creditor, trustee, or agent shall be deemed to the policyholder, to insure mortgagors of the creditor.    The insurance must be written in connection with a credit transaction that is secured by a first mortgage or deed of trust; must be made to finance the purchase of real property or the construction of a dwelling thereon, or to refinance a prior credit transaction made for such a purpose; and shall be payable to the policyholder.    Such payment shall reduce or extinguish the unpaid mortgage of the mortgagor or the extent of such payment;

(6)    Under a policy issued to cover any other substantially similar group which in the discretion of the Commissioner may be subject to the issuance of a group accident and sickness policy or contract; or

(7)(A)    Under a policy issued to a legal entity providing a multiple employer welfare arrangement, which means any employee benefit plan which is established or maintained for the purpose of offering or providing accident and sickness benefits to the employees of two or more employers, including self-employed individuals, individuals whose compensation is reported on Federal Internal Revenue Service Form 1099, and their spouses or dependents.    The term shall not apply to any plan or arrangement which is established or maintained by a tax-exempt rural electric cooperative or a collective bargaining agreement.

(B)    The amounts of insurance under the policy must be based upon some plan precluding

-22-

individual selection either by the employees, employers, or trustee.

(b)     As used in this chapter, the term "true association" means an organization that:

(1)     Has been in existence for at least five years;

(2)     Has been formed and maintained in good faith for purposes other than obtaining insurance:

(3)     Does not condition membership in the association on any health status related factor relating to an individual (including an employee of an employer or a dependent of an employee);

(4)     Makes health insurance coverage offered through the association available to all members regardless of any health status related factor relating to such members (or individual eligible for coverage through a member);

(5)     Does not make health insurance coverage offered through the association available other than in connection with a member of the association; and,

(6)     Meets such additional requirements as may be imposed under Georgia law or regulation.

65.     Georgia Insurance Code § 33-30-3 provides as follows:

"Blanket accident and sickness insurance" is that form of group accident and sickness insurance covering the groups of persons listed in paragraphs (1) through (6) of this Code section and issued upon the following basis:

(1) Under a group policy or contract issued to any common carrier or to any operator, owner, or lessee of a means of transportation, who or which shall be deemed the policyholder, covering a group defined as all persons or all persons of a class who may become passengers on such common carrier or such means of transportation;

(2) Under a group policy or contract issued to an employer, who shall be deemed the policyholder, covering all employees, dependents, or

-23-

guests defined by reference to specified hazards incident to the activities or operations of the employer or any class of employees, dependents, or guests similarly defined;

(3) Under a group policy or contract issued to a school or other institution of learning, a camp, the sponsor of the institution of learning or camp, or to the head or principal thereof, who or which shall be deemed the policyholder, covering students or campers; and supervisors and employees may be included;

(4) Under a group policy or contract issued in the name of any religious, charitable, recreational, educational, or civic organization, which shall be deemed the policyholder, covering participants in activities sponsored by the organization;

(5) Under a group policy or contract issued to a sports team or sponsors thereof, which shall be deemed the policyholder, covering members, officials, and supervisors; or,

(6) Under a group policy or contract issued to cover any other risk or class of risks which in the discretion of the Commissioner may be properly eligible for blanket accident and sickness insurance. The discretion of the Commissioner may be exercised on an individual risk basis or class of risks, or both.

66.     In an extraordinary display of self-dealing, the Defendants created a "Trust", which the Defendants own and control which is called the "AIG Group Insurance Trust, for the Account of HealthExtras."  This is a fictitious, illegal and sham Trust that is alter-ego of the Defendants, with premiums collected for the benefit of them rather than a valid group of persons. There is no constitution or bylaws and the HealthExtras "members" have no voting privileges or representation on any boards or committees.  This "Trust" was created for the sole purpose of selling the HealthExtras disability insurance to consumers with no supervision or oversight.

67.     Upon information and belief, the Georgia Department of Insurance has not approved either policy series C11695DBG nor Master Policy SRG 9540519 for sale to any eligible

-24-

blanket groups in Georgia or otherwise to any Georgia consumers.   The "Description of Coverage" sent to the Williams Plaintiffs and to the Lake Plaintiffs   from a HealthExtras account representative indicates the following information:

| | |
|---|---|
| **Policyholder:** | *AIG Group Insurance Trust, for the Account of HealthExtras* |
| **Master Policy Number:** | *9540-519* |
| **Effective Date:** | *September 1, 2004* |
| **Broker of Record:** | *JLT Services Corporation* |
| | *13 Cornell Road* |
| | *Latham, NY  12110* |

68.    The HealthExtras disability policy issued by Defendants to the respective named Plaintiffs and others similarly situated was not issued to a valid blanket group pursuant to the Georgia Insurance Code § 33-30-1(a)(1)-(7) or any other section of the Georgia Insurance Code, but instead was issued to "AIG Group Insurance Trust, for the Account of HealthExtras" a group that was and is ineligible pursuant to applicable Georgia law.

69.    The illegal group to whom the insurance product was sold consists solely of persons whose only commonality is that they have a credit card and were chosen by HealthExtras and others as a good marketing prospect for the policy.  <u>The group for which the Williams Plaintiffs and the Lake Plaintiffs and other Class Members are a part of was formed by HealthExtras and the other Defendants only for the purpose of obtaining insurance</u>. Therefore, Plaintiffs and similarly situated residents of the State of Georgia who purchased HealthExtras policies are not individually or collectively within any permissible blanket groups of persons as contemplated by Georgia Insurance Code as blanket groups are required to be organized and maintained in good faith for purposes other than that of obtaining insurance.   In fact, the putative Georgia Class Members are not even all customers of the same bank or credit card issuer.

70.     Accordingly, HealthExtras disability policy sold to Plaintiffs and all similarly situated Georgia residents are illegal under Georgia statutory law as all Georgia policyholders do not fall within a lawful blanket group. The Plaintiffs' "group" was formed only for and specifically for the purpose of obtaining insurance and for the benefit of HealthExtras and the other Defendants.   This illegal scheme devised and perpetrated by the Defendants effectively keeps the "members" in the dark and conceals the true nature of the "Master Policy" that contains broad harsh exclusions which the various underwriters use to wrongfully deny claims.

71.     Accordingly, pursuant to Georgia Law, the policy issued by the Defendants could not have been approved to be sold to the purported "group" of persons by the Georgia Department of Insurance, and therefore is illegal, is against public policy and constitutes an unlawful and deceptive trade practice, under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA").

72.     By illegally selling the policy to a group that was not and could not be a legal blanket group, the Defendants have breached their duty of good faith and fair dealing with the Plaintiffs and Class Members as a matter of law.

73.     Plaintiffs and all similarly situated Georgia residents were charged premiums for the illegal and illusory coverage provided by these Defendants.

### The Purpose of HealthExtras' and the Other Defendants' Violation of Georgia Law in Issuing the Policy to Themselves

74.     The purpose of the Defendants' noncompliance with the requirement that the group be "formed for the purposes other than obtaining insurance" was to avoid the policy being issued to an actual group of persons.   If the policy had been issued to an actual group of persons that was organized together for some purpose other than obtaining insurance, the policy, the advertised promises, the excessive premiums, and the broad, harsh exclusions that make recovery under the

-26-

policy virtually impossible, would have been subject to scrutiny by an actual group of persons.   A lawful group of persons would have had the opportunity to determine the relative merit and value of the policy before providing its members with the opportunity to purchase it.    In creating the fictitious "Trust" for the purpose of issuing the policy to themselves, HealthExtras and the other Defendants avoided allowing Georgia residents to have the protection of an association formed for their benefit to review and scrutinize the "Master Policy" to determine whether this insurance product offered for sale to them was worthy of their hard-earned dollars.

75.    In furtherance of their illegal and deceptive acts, the Defendants actually issued the policy to themselves, "AIG Group Insurance Trust, for the Account of HealthExtras" an illegal and sham Trust that is alter-ego of the Defendants, with premiums collected for the benefit of them rather than a valid group of persons.   As part of the scheme, the Defendants have issued the "Master Policy" to themselves, and refuse to allow the HealthExtras "members" access to it. Further, since the "members" are not part of any real group, and the Defendants own and control the "Insurance Trust", the members who are actually paying the premiums or "membership fees" as the Defendants characterize, have no opportunity to communicate with each other about any business practices or unfair claims practices regarding the HealthExtras Accidental Permanent Disability Policy.   This illegal scheme devised and perpetrated by the Defendants effectively keeps the "members" in the dark and conceals the true nature of the "Master Policy" that contains broad harsh exclusion which the various underwriters use to wrongfully deny claims.

76.    All of the Defendants' concerted actions in this regard were done to avoid regulation and to disguise the fact that the policy has no value to the actual persons who were and are paying the premiums.

-27-

## A Scheme of False and Deceptive Advertising

77.     Upon information and belief, HealthExtras in concert and conspiracy with the other Defendants directly targeted the  Williams Plaintiffs and the Lake Plaintiffs and other Georgia residents with direct mail advertisements that included, but are not limited to the following misleading statements:

   a.     "This program provides valuable protection in the event you become permanently totally disabled due to an accident."
   b.     "This HealthExtras Benefit Program provides you with a $1,000,000 tax-free cash payment if you're permanently disabled due to an accident."
   c.     "If an accident leaves you - the primary member - permanently disabled, you will receive a lump sum payment of $1,000,000."
   d.     "After 12 months of continuing and permanent disability caused by an accident - including the inability to work - the primary member will receive a payment of $1,000,000."
   e.     "You're covered with a $1,000,000 tax-free cash payment if you are permanently disabled as a result of an accident."

78.     However, in sharp contrast to the HealthExtras advertisements, policy series C11695DBG is replete with extremely harsh, restrictive and confusing exclusions and contradictory terms and definitions which intentionally render the policy virtually worthless to purchasers.

79.     For example, under the HealthExtras disability policy "Permanently Totally Disabled" is defined to mean:

   1. That the Insured Person has suffered any of the following:
         a. loss of both hands or feet; or
         b. loss of one hand and one foot; or
         c. loss of speech or hearing in both ears; or
         d. Hemiplegia; or
         e. Paraplegia; or
         f. Quadriplegia; and
   2. the Insured is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

"Loss of a hand or foot" means complete severance through or above the wrist or ankle joint. "Loss of hearing in both ears" means total and irrevocable loss of the entire ability to hear in both ears.   "Loss of speech" means total and irrecoverable loss of the entire ability to speak.

"Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. Limb(s) means entire arm or entire leg.   "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and lower Limbs.

80.    Further, "Loss" is defined to mean:

| Loss of: | Percentage |
| --- | --- |
| Sight of Both Eyes | 100% |
| One Hand & Sight of One Eye | 100% |
| One Foot & Sight of One Eye | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Hearing in One Ear | 25% |
| Thumb & Index Finger of Same Hand | 25% |

"Loss of a hand or foot" means complete severance through or above the wrist or ankle joint.   "Loss of sight of an eye" means total and irrecoverable loss of the entire sight in that eye. "Loss of thumb and index finger" means complete severance through or above the metacarpophalangeal joint of both digits.

81.    There are many examples in the public record of HealthExtras members being denied disability benefits after suffering catastrophic injuries, rendering them unable to work, yet being denied benefits by one of the figurehead "underwriters" engaged by HealthExtras based on one or more of the extremely restrictive and confusing exclusion in the "Master Policy" which is not provided to the members or any group or association for which they belong.   Upon information and belief there are thousands of these unfair and unconscionable denials which are not in the public record.

82.    For nearly 14 years, the various underwriters engaged by HealthExtras have used the harsh and restrictive exclusions in the HealthExtras policies to deny disability claims while

-29-

collecting millions from Georgia residents and all 50 states.

83.     Therefore, the Williams Plaintiffs, the Lake Plaintiffs, and all other similarly situated Georgia residents were charged premiums by these Defendants that were illegal under Georgia statutes and Department of Insurance regulations and were thus proximately damaged by the actions of these Defendants.

### A Scheme of Illegal Underwriting of the HealthExtras Disability Policy

84.     All HealthExtras policyholder information is retained and controlled by HealthExtras, a company who is not a licensed insurance Company anywhere.  Neither the underwriters, National Union, Virginia Surety, Stonebridge Life Insurance, nor Alliant, the current "Broker of Record" possesses or retains any information whatsoever about any person who has purchased and paid premiums for the HealthExtras disability policy.

85.     All policyholder information is retained by HealthExtras.   All decisions regarding the HealthExtras disability policy are made by HealthExtras including the amount of premiums to charge.   HealthExtras also drafted and developed the policy language, including the harsh exclusions used to deny claims.

86.     Underwriters, Defendant, National Union, Defendant, Virginia Surety as well as other underwriters like Stonebridge Life Insurance Company, as well as the Broker of Record, Defendant, Alliant are merely figureheads for the illegal HealthExtras scheme.

87.     On September 19, 2013 HealthExtras emailed to Randy and Mary Williams, a "Description of Coverage" of their HealthExtras disability policy on "HealthExtras" letter head proclaiming it was from the "Broker of Record Alliant Services Houston, Inc., P.O. Box 1159, Rockville, MD 20849-9808."   However, P.O. Box 1159, Rockville, MD

20849-9808, is also the mailing address of HealthExtras.   This is only one fact that illustrates that HealthExtras, a company not licensed anywhere as an insurance company, controls the entire "HealthExtras Program."

88.     Further, National Union, who is the purported underwriter for by far the most significant risk in the HealthExtras disability policy (the $1,000,000 Disability Benefit), receives only $2.24 on a monthly basis for each "member" who pays for the HealthExtras disability policy. This is roughly only 15% of the current rate of $15.95 paid by current HealthExtras members for the HealthExtras disability policy.   Therefore, roughly 80% of all premiums paid for the HealthExtras disability policy is paid to HealthExtras, a company that is a company not licensed anywhere as an insurance company.   This is an illustration of the excessive premiums charged for the HealthExtras disability insurance product.

89.     Although the policy summaries delivered to the HealthExtras members for the Permanent and Total Disability insurance component of the HealthExtras disability policy list Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and Stonebridge Life Insurance Company and Virginia Surety as the purported insurers/underwriters, upon information and belief, these insurers have agreed in writing that HealthExtras will pay claims made for disability benefits under the HealthExtras disability policy.

90.     These agreements include but are not limited to a July 17, 2000 letter agreement between HealthExtras and at least one insurer indicating that HealthExtras agreed to pay disability benefits to any person who does not qualify as permanently and totally disabled under the policy as defined in the policy, but who is nonetheless unable to perform the material and substantial duties of such person's regular occupation.   Upon information and belief, additional

agreements may be revealed during discovery in this matter.   This scheme effectively transfers the underwriting risk to HealthExtras making HealthExtras the underwriter.

91.    HealthExtras is not an insurance company and is not licensed to underwrite insurance of any kind Georgia, or any other state.   However, this scheme allows HealthExtras, in conspiracy with the other Defendants, to avoid insurance regulations that are designed to protect the public and is in direct violation of numerous sections of the Georgia Insurance Code.

92.    These violations include but are not limited to, O.C.G.A.   Section 33-3-6 and 33-3-7, requiring insurers of disability insurance to have a certain amount of paid-in capital, the purpose of which is to protect the public.

93.    HealthExtras is not an insurance company and has never been a licensed insurer in the State of Georgia or any other state.

94. Defendants have participated in an illegal scheme to allow   HealthExtras to act as the underwriter for the Permanent and Total Disability insurance component of the HealthExtras disability policy.   HealthExtras is not and has never been a licensed insurer in the State of Georgia.   An agreement by HealthExtras and the other Defendants in this matter constitutes a conspiracy between the HealthExtras and the other Defendants to defraud consumers.

**Joint Enterprise and Conspiracy to Deceive the Public and Violate Georgia Law**

95.    All Defendants engaged in a joint enterprise and conspiracy to utilize their efforts to sell, broker, underwrite, collect, allocate and share premiums derived from the HealthExtras disability program to Plaintiffs and the putative Class Members, for their own individual and mutual benefit, without fully disclosing to Plaintiffs and the putative  Class Members that the policies being sold to them did not and could not comply with Georgia law, and said lack of

compliance was material information about such policies.

96.     Defendants engaged in agreements for a common purpose, a common pecuniary interest, and a joint venture to share illegal profits and all Defendants engaged in at least one act in furtherance of the illegal HealthExtras scheme.

97.     As a result, the Defendants are jointly and severally liable for any and all damages or restitution that the Plaintiffs and Class members are entitled to recover in this action.

## FIRST CAUSE OF ACTION

### Violation of Georgia's Uniform Deceptive Trade Practices Act, ("GUDTPA")

### O.C.G.A. § 10-1-370, *et. seq.*

98.     Plaintiffs, on behalf of themselves and all other similarly situated Georgia residents, reasserts and re-alleges Paragraphs one (1) through ninety-seven (97), all as if set forth more fully set forth herein and further allege:

99.     Defendants intended to do the acts that were deceptive and/or fraudulent, namely; to market, sell and distribute the HealthExtras disability policy, without disclosing material information, namely the extremely restrictive exclusions, making recovery of benefits virtually impossible and the fact that the policy could not be legally sold under Georgia law.

100.    Each of the representations Defendants made regarding HealthExtras disability policy were material, consistent, uniform, and widespread.  Defendants specifically targeted Plaintiffs and the proposed Class members.   In fact, Defendants intended for their representations to induce Plaintiffs and the proposed Class members.

101.    Defendants' deceptive marketing scheme concerning the HealthExtras disability policy violates Georgia UDTPA because, inter alia, Defendants:

a)   knowingly caused Plaintiffs and the proposed Class members confusion and misunderstanding as to the source, sponsorship, approval,  certification and coverage provisions of the HealthExtras disability policy to their financial detriment;

b)   knowingly passed off goods and services of the  HealthExtras Defendants as those of the Defendant Underwriters to financial detriment of the Plaintiffs and the proposed Class; and

c)   knowingly marketed, promoted, advertised and represented the HealthExtras disability policy as financial protection against disability while concealing the extremely restrictive exclusions in the Master Policy making  recovery of benefits virtually impossible, causing confusion and the likelihood of misunderstanding as to such benefits.

102.    Defendants deceptive trade practices are fraudulent in that the business acts and practices described had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by selling, marketing and distributing HealthExtras disability policies as legitimate and protective policies in the event of a catastrophic event when such representations are confusing, deceptive and unfounded.  In purchasing HealthExtras disability policies, Plaintiffs reviewed and relied on the marketing material and the likeness of Christopher Reeve.  Based on these representations, Plaintiffs reasonably expected that, among other things, the HealthExtras disability policy would provide them protection in the event of disability.   As detailed previously, the HealthExtras policy is not a lawful and legitimate policy and does not provide the protection as represented by Defendants.   Furthermore, the Defendants failed to disclose material information

-34-

to the Plaintiffs regarding the true nature of the policy, including but not limited to its harsh and restrictive provisions, the real terms in the master policy they concealed from consumers and the unlawfulness of the product.  Had Plaintiffs known these facts, they may have shopped in the competitive market for another disability product to protect themselves and their family.

103.    Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and/or unconscionable practices have the tendency, capacity, and likelihood to confuse and deceive Plaintiffs and the proposed Class' members into believing that they are purchasing goods or services of a particular standard, quality or grade when they are actually of another, in fact illegal good or service.

104.    HealthExtras' sale, marketing, collection, retention, and allocation of fees and premiums, as described herein, for HealthExtras' program component Accidental Permanent and Total Disability insurance policy and Emergency Accident and Sickness Medical Expense benefit coverage   from Plaintiffs and all other similarly situated Georgia residents constitutes a violation of **O.C.G.A.** § 10-1-370, *et. seq.* because Defendants' conduct creates a likelihood of confusion and misunderstanding with respect to the sale of illegal insurance.

105.    National Union, Virginia Surety and Alliant's receipt and sharing of sums collected from the Plaintiffs and putative class members, as described herein, by HealthExtras, constitutes a violation of **O.C.G.A.** § 10-1-370, *et. seq.* because Defendants' conduct creates a likelihood of confusion and misunderstanding with respect to the sale of illegal insurance.

106.    Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Stonebridge Life Insurance Company, AMEX Assurance Co. Insurance and Virginia Surety's role in underwriting the unlawful policies constitutes a violation of **O.C.G.A.** §

10-1-370, *et. seq.* because Defendants' conduct creates a likelihood of confusion and misunderstanding with respect to the sale of illegal insurance.

107.    Alliant's role in brokering the unlawful policies constitutes a violation of **O.C.G.A.** § 10-1-370, *et. seq.* because Defendants' conduct creates a likelihood of confusion and misunderstanding with respect to the sale of illegal insurance.

108.    Defendants have violated and continue to violate **O.C.G.A.** § 10-1-370, *et. seq.* as they continue to collect and share premiums derived from the illegal and void policies. Likewise, Alliant continues to broker the illegal and void policies and Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Stonebridge Life Insurance Company, AMEX Assurance Co. Insurance and Virginia Surety underwrite the illegal and void policies.

109.    The policies sold by Defendants, and for which premiums were collected from Plaintiffs and all other similarly situated Georgia residents, are without any value as the same are illegal and meet the needs of no consumer who was targeted for sale of the product.

110.    Insurance coverage issued under Policy Series C11695DBG, underwritten by Federal and then National Union, purports to be and was approved by the Georgia Department of Insurance as "blanket accident insurance."

111.    "Blanket Accident Insurance" may only be issued to eligible blanket groups as defined by O.C.G.A.33-30-1(a)(1)-(7).   National Union obtained approval of Policy Series 11695DBG as "blanket accident insurance" and represented to the Georgia Department of Insurance in August, 2001 that it "intended to issue the policy to eligible blanket groups under O.C.G.A.33-30-1(a)(1)-(7).   Upon information and belief, HealthExtras has participated in the

collection and allocation of monetary sums from the Plaintiffs and the putative class members for other blanket accident insurance that has also been issued to ineligible blanket groups in the State of Georgia since April 1, 2000.

112.    The purported policyholder of the HealthExtras product component Accidental Permanent and Total Disability benefit coverage, underwritten by National Union, that Plaintiffs, and similarly situated Georgia residents were charged for is denoted as "AIG Group Insurance Trust, for the Account of HealthExtras" on documents provided to these Plaintiffs prior to the commencement of this action.

113.    The Emergency Accident and Sickness Medical Expense benefit coverage underwritten by Virginia Surety, does not include a designation of any entity as the policyholder and was issued to Plaintiffs and the putative class members absent the existence of   valid blanket group.

114.    The only unifying characteristic of the HealthExtras "group" of insured persons is the fact that these persons have credit card accounts. In fact, the policyholder "AIG Group Insurance Trust for the Account of HealthExtras" and other insurance trusts that are part and parcel of the HealthExtras program are created for the sole purpose of obtaining and placing insurance in order to avoid state insurance laws and defraud consumers.   Thus, the "blanket group" did not exist,   was not approved by the Georgia Department of Insurance and, in fact, could never be so approved pursuant to O.C.G.A.33-30-1(a)(1)-(7) because the group was formed solely for the purpose of obtaining insurance and for no other reason.

115.    The "HealthExtras" program consists of illegal and void insurance policy components as marketed, sold and for which fees including premiums were collected and shared

among these Defendants from Plaintiffs and other similarly situated Georgia residents, were illegally sold and charged to Plaintiffs and those similarly situated Georgia residents, and was contrary to National Union's representations to the Georgia Department of Insurance that Policy Series C11695DBB would be issued only to "eligible blanket groups."

116.    By purporting to insure a "blanket group" outside the parameters of Georgia law, any premium calculations submitted by National Union, Virginia Surety or any other underwriter issuing said component policies to Georgia residents are rendered invalid. Despite these deficiencies, Defendants continue, to this day, to charge and share illegal premiums for illegal policies and, in fact, have increased the premiums without any valid submission of rates for approval to the Georgia Department of Insurance, all proximately causing damage to Plaintiffs and other similarly situated Georgia residents.

117.    Defendants willfully intended, or consciously disregarded, the fact that the HealthExtras disability policy could not be sold in Georgia and issued to a "Trust" which they control and was organized by them, only for the purpose of obtaining insurance.

118.    In making and disseminating the false, deceptive or misleading solicitations, as alleged herein, Defendants knew or should have known that the information and statements contained therein were false, deceptive or misleading, and that they advertised the goods and services with the intent not to sell them as advertised in violation of   O.C.G.A. Section 10-1-372. Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and/or unconscionable practices caused Plaintiffs and the proposed Class' members to suffer ascertainable losses in the amount of the monies each paid for the HealthExtras disability policy.

119.    Defendants' violated the Georgia Uniform Deceptive Trade Practices Act because

Defendants' advertising and marketing was willful, untrue, misleading, and likely to deceive the public and/or has deceived the public.   Specifically, Defendants' advertising and marketing falsely represented the value and legality of the HealthExtras disability policy.    Plaintiffs and the proposed Class members are accordingly harmed by Defendants' conduct in violation of the Georgia UDTPA.

120.    Pursuant to the provisions of Georgia's Uniform Deceptive Trade Practices Act, Plaintiffs on behalf of themselves and each member of the proposed Class, seek declaratory relief, pursuant to O.C.G.A. Section 10-1-373 as requested herein, and any other relief the Court deems appropriate.

121.    Defendants' deceptive trade practices constitute a willful, continuing course of conduct of unfair, unlawful and fraudulent trade practices because Defendants were, and continue to sell HealthExtras disability policies, and market it in a manner that is likely to deceive the public.   Plaintiffs and the proposed Class suffered actual and monetary injury because they received a policy that was substantially and materially different from and inferior to what the Plaintiffs and the proposed Class were entitled to receive, and the Plaintiffs and the proposed Class received such different and inferior policy, as a result of the Defendants' unlawful deceptive conduct.

122.    Defendants' intentional marketing of HealthExtras disability policies without disclosing the true policy terms and true nature of this illegal product violated Georgia law continuously and systematically from 2000 to 2014.

123.    Plaintiffs and other similarly situated Georgia residents have been proximately injured as a result of the Defendants' willful, confusing, deceptive actions and are thus entitled to

injunctive relief, costs and attorneys' fees, proximately caused to them as allowable under O.C.G.A. § 10-1-373 and other damages recoverable under Georgia common law and statutes, per O.C.G.A. § 10-1-373(c), namely Plaintiffs seek restitution of all monies paid to Defendants for HealthExtras premiums, disgorgement of all profits accruing to Defendants because of Defendants' unlawful, deceptive trade practices and appropriate injunctive relief as described herein.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

124.    Plaintiffs reallege and incorporate by reference each of the factual allegations set forth in this complaint as if set forth herein.

125.    Defendants have been and continue to be enriched by their deceptive trade practices acts and omissions alleged herein for all states wherein the Class' members reside.

126.    These deceptive acts and omissions allow Defendants to gain millions of dollars in profits in the State of Georgia that would not have been gained but for Defendants' deceptive acts and omissions.

127.    Plaintiffs and the proposed Class members and those similarly situated paid Defendants an amount that far exceeds the value of the insurance product identified herein as a result of Defendants' acts and omissions.

128.    Plaintiffs and the Class members suffered damages due to the Defendants' acts and omissions as alleged herein.

129.    Defendants have and continue to be unjustly enriched as a result of their deceptive acts and omissions.

130.    Defendants lack any legal justification for engaging in a course of deceptive acts and omissions as alleged herein at Plaintiffs' and the Class' expense.

131.    No other remedy at law can adequately compensate Plaintiffs and the Class members for the damages occasioned by Defendants' conscious and willful choice to engage in a course of deceptive acts and omissions.

132.    When seeking to purchase accidental disability insurance and emergency accident and sickness insurance, Plaintiffs, and the putative Class Members have a choice of various underwriters, coverage amounts and coverage terms.

133.    Plaintiffs, and similarly situated Georgia residents purchased coverage due to its relatively low price point, its high coverage amount and other market based factors, including the marketing and likeness of HealthExtras Spokesperson, Christopher Reeve.

134.    Plaintiffs and the putative Class Members purchased their HealthExtras disability insurance in order to protect themselves should they suffer disability as a result of an accidental injury or accident or sickness while traveling.   However, the actual HealthExtras policy is virtually worthless.

135.    Defendants, individually and collectively, failed to disclose that the insurance coverage being sold to Plaintiffs and the   putative Class Members was illegal under Georgia law in that Plaintiffs and the putative Class Members were not members of a lawful "blanket group."

136.    By purchasing the HealthExtras program that included the component policies and paying fees and premiums, Plaintiffs and the putative Class Members conferred a benefit upon the Defendants, without knowledge that the purchased coverage was illegal and void.

137.    Defendants knowingly accepted and retained this non-gratuitous benefit conferred

-41-

upon them by Plaintiffs and the putative Class Members despite Defendants' knowledge the subject policies were illegal as a matter of Georgia law for the reasons enumerated herein.

138.    Plaintiffs and the putative Class Members have spent and continue to spend thousands of dollars in premium payments for illegal policies that could never be lawfully sold to Georgia residents.

139.    The Defendants have been unjustly enriched in retaining the payments paid by Plaintiffs and the putative Class Members for the Accidental Permanent and Total Disability coverage and the Emergency Accident and Sickness Benefit insurance coverage.

140.    The Defendants' retention of the non-gratuitous benefit conferred by Plaintiffs and the putative Class Members under these circumstances is unjust and inequitable.

141.    No other remedy at law can adequately compensate Plaintiffs and the putative Class Members for the economic damages resulting from Defendants' wrongful actions as alleged herein.

142.    Because Defendants' retention of the non-gratuitous benefit conferred upon them by Plaintiffs and the putative Class Members is unjust and inequitable, Defendants must pay restitution in the form of disgorgement of all revenues, earnings, profits, compensation and benefits which Georgia residents have paid to the conspirators as a result of such business acts and practices.

### THIRD CAUSE OF ACTION

### Breach of the Duty of Good Faith and Fair Dealing

143.    Plaintiffs reallege and incorporate by reference each of the factual allegations set forth in this complaint as if set forth herein.

144.     Defendants have breached the duty of good faith and fair dealing to Plaintiffs, and similarly situated Georgia residents, by engaging in the conduct set forth hereinabove.

145.     Defendants, individually and collectively, knew that the HealthExtras disability policy could only be issued to legal "blanket groups", that the HealthExtras disability policies were sold to individuals who were not members of a lawful "blanket group" under Georgia law, instead using the guise of insurance trusts in place of a lawful blanket group.

146.     Despite Defendants' collective knowledge, Defendants failed to reveal to Plaintiffs, and other similarly situated Georgia residents that their HealthExtras disability policies were illegal and of little value, that their premiums were thus illegal and not approved, that they paid for illegal policies and that they were not part of any lawful blanket group.

147.     Despite this duty, Defendants sold illegal HealthExtras insurance policies, collected premiums therefore and shared the monies derived there from Plaintiffs, and other similarly situated Georgia residents and thus breached the duty of good faith and fair dealing as a matter of law. This breach proximately caused damages to Plaintiffs, and other similarly situated Georgia residents.

148.     Plaintiffs, and other similarly situated Georgia residents, have been proximately injured as a result of the Defendants' breach of the duty of good faith and fair dealing and are thus entitled to damages proximately caused them by said breach.

## FOURTH CAUSE OF ACTION

### Civil Conspiracy

149.     Plaintiffs reallege and incorporate by reference each of the allegations set forth in this complaint as if set forth herein.

150.    All Defendants engaged in a conspiracy to utilize their efforts to sell, broker, underwrite, collect, allocate and share premiums derived from the HealthExtras disability insurance policy to the Plaintiffs and the putative Class Members, for their own individual and mutual benefit, without fully disclosing to Plaintiffs and the putative Class Members that the policies being sold to them did not and could not comply with Georgia law, said lack of compliance being material information about such policies.    Further, this lack of disclosure constitutes an omission of material fact regarding the supposed polices as the same have no value. As a result, Plaintiffs and the putative Class Members purchased, paid for and retained HealthExtras disability insurance policies that were illegally solicited, marketed, sold, brokered, serviced, underwritten, and administered by Defendants, and paid to Defendants by monthly or annual premiums.

151.    In the marketing, sale, brokerage, servicing, underwriting and administration of the illegal policies as set forth herein, all Defendants agreed and conspired, as described herein, for the purpose of   an unlawful end or to accomplish a lawful end by unlawful means.

152.    Each Defendant committed at least one overt act, as described herein, in furtherance of the aims of the agreement and pursuant to a common scheme.

153.    As a direct result of Defendants' conspiratorial actions, Plaintiffs and the putative Class Members have suffered damages.

## FIFTH CAUSE OF ACTION

### Violation of O.C.G.A. 16-14-1 Et. Seq. (GA RICO)

### By All Defendants Against All Plaintiffs

154.    Plaintiffs reallege and incorporate by reference each of the allegations set forth in

this complaint as if set forth herein.

155**.**   Plaintiffs are "persons" within the meaning of O.C.G.A. 16-14-6(c).

156.   Defendants are associated as "enterprise(s)" within the meaning of O.C.G.A. 16-14-3. Collectively, these associations form the "HealthExtras Enterprise".

157. All Defendants intentionally acquired millions of dollars through a pattern of racketeering activity in violation of O.C.G.A. 16-14-4(a).

158.   All Defendants conducted and participated in the enterprise(s) through a pattern of racketeering activity in violation of O.C.G.A. 16-14-4(b).

159.   All Defendants conspired to violate both O.C.G.A. 16-14-4(a) and (b) in violation of O.C.G.A. 16-14-4(c).

160.   The predicate acts by Defendants that make up the pattern of racketeering activity include:

A. Multiple acts of theft in violation of O.C.G.A. 16-8-2 and 16-8-3 in connection with:

1.   intentionally or knowingly marketing and selling a disability product to an unlawful "blanket group" and creating a sham Trust consisting of named Defendants as the policy holder.

2.   intentionally or knowingly taking and appropriating by unlawful means millions of dollars by charging improper insurance premiums for illegal insurance and fraudulently increasing insurance premiums paid by Plaintiffs and members of the putative Class; and;

3.   intentionally or knowingly committing other acts of theft and fraud as alleged above.

B.    Multiple acts in violation of O.C.G.A. 16-9-101 in connection with:

1. intentionally or knowingly sending false emails from, through and to computers in Georgia relating to insurance premiums and insurance fees and insurance coverages;

2. intentionally or knowingly sending false emails containing fraudulently inflated invoices for insurance premiums;

3.   intentionally or knowingly sending false emails from, through and to computers in Georgia relating to Defendants' knowledge of fraud, theft and other intentional and knowing misconduct as alleged above.

C.    Multiple acts of mail fraud in violation of 18 U.S.C. 1341, in connection with multiple and continuous use of the United States mail in furtherance of the fraudulent scheme, including:

1. The mailing of information relating to the solicitation of disability insurance that is illegal;

2. The mailing of information relating to the illegal sale of disability insurance;

3. The mailing of information relating to the illegal post-sale marketing of disability insurance;

4. The mailing of information relating to the illegal creation of "trusts" in which to "place" this insurance to attempt to avoid state insurance regulations and laws;

5. The mailing of information relating to the illegal calculation and collection of excessive premiums or "fees" charged for this illegal insurance product.

6. Upon information and belief, other fraudulent communications by Defendants employing the U.S. mail.

D.    Multiple acts of wire fraud in violation of 18 U.S.C. 1343, in connection with multiple and continuous use of electronic mail and other wire communication in furtherance of the fraudulent scheme, including;

1.   Debiting/charging monthly premiums from the Williams Plaintiffs', the Lake Plaintiffs', and other Class Members' debit/credit card account for worthless disability insurance;

2. Debiting/charging monthly premiums from the Williams Plaintiffs', the Lake Plaintiffs', and other Class Members' debit/credit card account for worthless disability insurance;

3. Emailing and/or mailing worthless and illegal Accident Protection Plan Program Summaries and Description of Coverages to the Williams Plaintiffs', the Lake Plaintiffs, and other Class Members.

4. Upon information and belief, other fraudulent communications by Defendants employing electronic mail and other wire communication.

161.    The Williams Plaintiffs, the Lake Plaintiffs, and the other members of the Class relied to their detriment upon these fraudulent communications through the U.S,. mail, electronic mail and other means.

162.    These fraudulent communications directly and proximately caused injury and harm to the Williams Plaintiffs, the Lake Plaintiffs, and the putative Class by, among other things, causing the Williams Plaintiffs, the Lake Plaintiffs,   and the other Class members to pay premiums to Defendants for worthless, illegal insurance.

163.    Defendants committed far more than two of these predicate acts as alleged above with respect to multiple plaintiffs.

164.    These predicate acts of theft, mail fraud, sending deceptive commercial mails and

wire fraud constitute racketeering activity under O.C.G.A. 16-14-3(9)(B), O.C.G.A. 16-14-3(9)(A)(ix), O.C.G.A. 16-14-3(9)(A)(xxix), and O.C.G.A. 16-14-3-9(A)(xxxix), and the incorporated provisions of federal law.

165.    These predicate acts constitute a pattern of racketeering activity because they were interrelated and were committed by Defendants as alleged above in furtherance of a common scheme and conspiracy.

166.   These acts were committed through similar transactions, and/or communications, and had a common purpose and intent to defraud the Williams Plaintiffs, the Lake Plaintiffs, and other Class Members in order to acquire insurance premiums for worthless, illegal disability insurance.

167.   As a direct and proximate result of these violations of O.C.G.A. 16-14-4 by the Defendants in the scheme, the Williams Plaintiffs, the Lake Plaintiffs,   and the other Members of the putative Class, have suffered millions of dollars of damages and injury for which Defendants are jointly and severally liable in such amounts as may be determined at trial.

168.    Pursuant to O.C.G.A. 16-14-6(c), the Williams Plaintiffs, the Lake Plaintiffs, and the rest of the Class Members are entitled to an award of treble damages, that being three (3) times their actual damages, and punitive damages, and their costs for investigation and litigation, including reasonable attorney's fees.

## **SIXTH CAUSE OF ACTION**

### **Punitive Damages Pursuant to O.C.G.A. §51-12-5.1.**

169.    Plaintiffs reallege and incorporate by reference each of the allegations set forth in this complaint as if set forth herein.

-48-

170.    Defendants' acts, omissions, and course of conduct, in dealing with Plaintiffs and all Class Members, constitute fraud, malice and willful and wanton conduct and entire want of care.   Defendants' actions demonstrate a specific intent to cause harm.   The actions described in this Complaint demonstrate Defendants' willful and calculated misconduct and wantonness, entire want of care and specific intent to cause harm to Plaintiffs and the Class Members pursuant to § O.C.G.A. §51-12-5.1.

171.    Defendants' fraud, malice and willful and wanton conduct was related to Plaintiffs and the Class Members' claims for deceptive trade practices, breach of the duty of good faith and fair dealing, unjust enrichment, civil conspiracy, and violations of GA RICO.

172.    Specifically, as set forth more fully herein, the Defendants, marketed, sold and collected premiums for Accidental Permanent and Total Disability insurance products and an Emergency Accident and Sickness Medical Expense insurance product that were void as   against the public policy of the State of Georgia.

173.    Further, Defendants represented to the supposed "insured persons" that the policy was a legal and valid insurance policy.

174.    As Plaintiffs and the putatative Class Members were not part of a legal "blanket group", any and all premiums charged for the supposed coverage were unlawful.

175.    Defendants knew that they were illegally marketing, selling, brokering and underwriting illegal insurance products and collecting, allocating and sharing monetary fees and premiums with the express purpose of avoiding the parameters of Georgia law with regard to "blanket group" coverage.

176.    Defendants and/or their officers, directors and/or managers participated in and/or

condoned and continue to condone the willful conduct as described herein by continuing to market, sell, broker, underwrite, collect, allocate and share premiums for the illegal policies through the pendency of this action despite the clear and continuing violations of the Georgia law. Due to Defendants' willful misconduct, wantonness, entire want of care and specific intent to harm the Plaintiffs and Class Members, punitive damages are appropriate and necessary pursuant to O.C.G.A. §51-12-5.1.

**SEVENTH CAUSE OF ACTION**

**Injunction**

177.    Plaintiffs reallege and incorporate by reference each of the allegations set forth in this complaint as if set forth herein.

178.    Defendants continue to market, sell, broker, underwrite, collect, allocate and share premiums for the illegal HealthExtras disability policies through the pendency of this action despite the clear and continuing violations of the Georgia law and public policy.

179.    Plaintiffs and the putative Class Members are entitled to injunctive relief to stop the Defendants from marketing and collecting of illegal insurance premiums for the HealthExtras disability policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, demand judgment against Defendants as follows:

(a)    An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class Members;

(b)     An order declaring the HealthExtras disability policy illegal under Georgia law and against public policy;

(c)     An order declaring that the Defendants' conduct to be in violation of Georgia DTPA and Georgia RICO;

(d)     An order entering judgment in favor of Plaintiffs, Randy and Mary Williams, and the Class Members against Defendants;

(e)     An order awarding damages in the form of disgorgement of all revenues, earnings, profits, compensation and benefits which Georgia residents have paid to the conspirators as a result of the illegal acts, restitution, actual damages, treble damages, punitive and exemplary damages, against Defendants in favor of Plaintiffs and putative Class Members in an amount to be determined by the Court as fair and just given Defendants' wrongful conduct;

(f)     Injunctive relief in the form of an Order prohibiting further of the Defendants' unlawful activities in the State of Georgia or an order of non-monetary relief as the Court may deem proper; and

(g)     An order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses, including costs of experts and of suit

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members hereby demand a jury trial on all claims so triable in this action.

RANDY AND MARY WILLIAMS,

By Counsel,


_____/s/ J. Benjamin Finley_____

J. Benjamin Finley (GA State Bar NO. 261504
MaryBeth V. Gibson (GA State Bar NO. 785643)
Attorneys for Plaintiffs
The Finley Firm, P.C.
2931 N. Druid Hills, Suite A
Atlanta, GA
Telephone (404)320-9979
Fax:        (404)320-9978
bfinley@thefinleyfirm.com
mgibson@thefinleyfirm.com


_____/s/ Aaron C. Hemmings_____
Aaron C. Hemmings, (NC State Bar No. 29810)
*Attorney for Plaintiffs* (pro hac vice to be filed)
Hemmings & Stevens, P.L.L.C.
5613 Duraleigh Road, Suite 111
PO Box 90698
Raleigh, NC 27675
Telephone:     919-277-0161
Fax:           919-277-0162
ahemmings@hemmingsandstevens.com


_____/s/ Joseph H. Aughtman_____
Joseph "Jay" H. Aughtman (AL State Bar No. ASB-8081-A43J)
*Attorney for Plaintiffs* (pro hac vice to be filed)
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:     334-215-9873
Facsimile:     334-213-5663
jay@aughtmanlaw.com