IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDY WILLIAMS, et al.,

   Plaintiffs,

     v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA
doing business as
National Union Fire Insurance
Company, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-309-TWT

**OPINION AND ORDER**

This case is about the marketing and sale of allegedly illusory insurance policies. It is before the Court on the Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion to Dismiss [Doc. 79]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 79] is DENIED.

**I. Background**

The Defendants HealthExtras, LLC, National Union Fire Insurance Company of Pittsburgh, PA, and Catamaran Health Solutions, LLC were involved in the

marketing, sale, and administration of disability insurance policies.[1] In 1999 or 2000, HealthExtras sent the Plaintiffs Randy Williams, Mary Williams, Larry Lake, and Linda Lake information concerning a disability insurance policy providing the following benefits:

> First, the Accidental Permanent and Total Disability insurance purports to provide "coverage" of a One Million Dollar . . . benefit in the event of permanent disability as a result of an accident [Permanent Disability Benefits]. Second, an Emergency Accident and Sickness Medical Expense Benefit that is . . . purported to cover up to Two Thousand Five Hundred [dollars] . . . in medical expenses in the event of accident or sickness while away from home [Emergency Benefits].[2]

The Plaintiffs enrolled in this policy through Catamaran, and paid premiums from 2000 until 2013.[3] On January 1, 2005, the Defendant National Union became the underwriter for the Permanent Disability Benefits.[4]

The Plaintiffs claim that the insurance program was illegal under Georgia law. For example, the Plaintiffs allege that the insurance policy was never filed with the Commissioner of Insurance, as required by Georgia law.[5] In addition, the Plaintiffs

---

[1]   Am. Compl. ¶ 19.

[2]   Am. Compl. ¶¶ 36, 49.

[3]   Am. Compl. ¶¶ 41, 52.

[4]   Am. Compl. ¶ 50.

[5]   Am. Compl. ¶ 66.

allege that HealthExtras was often unwilling or unable to satisfy claims by those entitled to benefits under the policy.[6] Specifically, the Plaintiffs allege that the majority of the premium payments were used to cover marketing expenses or were converted into profits for HealthExtras.[7] They were allegedly not earmarked to cover potential payments owed to the insured, and so many were wrongfully denied benefits.[8] The Plaintiffs, however, never claim that they personally sought and were denied benefits. The Plaintiffs filed suit, asserting claims for unjust enrichment, breach of the duty of good faith and fair dealing, and violations of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act. The Defendant National Union moves to dismiss.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[9] For a claim to be plausible, the supporting factual matter must establish more than a mere

---

[6] Am. Compl. ¶ 56.

[7] Am. Compl. ¶ 54.

[8] Am. Compl. ¶¶ 55-56.

[9] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

possibility that the plaintiff is entitled to relief.[10] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[11]

### III. Discussion

The Court begins by addressing the legal dispute underlying the Plaintiffs' claims: whether the insurance policies that they purchased were valid and legally enforceable. The Plaintiffs argue that they paid premiums for "illusory" insurance policies. They argue that, because the insurance policies allegedly violated Georgia insurance laws, they were legally void. In response, the Defendant argues that even if the insurance policies did not comply with certain insurance laws, they were nonetheless enforceable. Thus, the Defendant argues, the Plaintiffs got what they paid for.

Under O.C.G.A. § 33-24-12(a), "[a]ny insurance policy . . . otherwise valid which contains any condition or provision not in compliance with the requirements

---

[10] See Iqbal, 556 U.S. at 678.

[11] See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

of [Title 33, which governs insurance policies] shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with [Title 33]." Furthermore, the very next paragraph – O.C.G.A. § 33-24-12(b) – states that "[n]o illegality . . . shall be deemed to relieve the insurer of any liability incurred by it under the contract while in force or to prohibit the insurer from retaining the pro rata earned premium on the contract." Thus, even assuming the Plaintiffs' allegations to be true, the insurance policies they received were not "illusory." To the contrary, if the Plaintiffs had been entitled to any benefits under the policies, the Defendant would have been legally obligated to provide them.

In response, the Plaintiffs first refer to O.C.G.A. § 13-8-2(a), which states that "[a] contract that is against the policy of the law cannot be enforced."[12] But the problem with this argument, of course, is that there is a specific statute indicating that insurance contracts are enforceable despite violations of Georgia's insurance laws.[13] And Georgia courts have made clear that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any

---

[12] Pls.' Resp. Br., at 6-7.

[13] See O.C.G.A. § 33-24-12(a).

inconsistency between them."[14] Even more, the Georgia Supreme Court has stated that O.C.G.A. § 33-24-12 "controls if a policy is inconsistent with insurance laws."[15]

The Plaintiffs then argue that O.C.G.A. § 33-24-12 only calls for the enforcement of an insurance policy when a "condition or provision can be altered to make [the] policy conform to Georgia law."[16] This argument is without merit. To begin, as noted earlier, O.C.G.A. § 33-24-12(b) expressly states that "[n]o illegality . . . shall be deemed to relieve the insurer of any liability incurred by it under the contract while in force." Additionally, the Plaintiffs' reading is inconsistent with how Georgia courts have interpreted section 33-24-12. For example, in Security Life Ins. Co. v. Clark,[17] the defendant – in violation of Georgia law – had failed to file the *entire policy* with the Georgia Department of Insurance.[18] The Georgia Court of

---

[14] Marshall v. Speedee Cash of Georgia, 292 Ga. App. 790, 791 (2008) (internal citations omitted).

[15] Flewellen v. Atlanta Cas. Co., 250 Ga. 709, 713 (1983); see also Penn America Ins. Co. v. Miller, 228 Ga. App. 659, 660 (1997) (supporting the proposition that, based upon O.C.G.A. 33-24-12(a), "the legislature did not intend a technical violation of" state insurance regulations "automatically to invalidate" an insurance policy.).

[16] Pls.' Resp. Br., at 13.

[17] 229 Ga. App. 593 (1997), rev'd in part sub nom. Clark v. Sec. Life Ins. Co. of Am., 270 Ga. 165 (1998).

[18] See id. at 599.

Appeals nonetheless found that "although failing to file the policy is a misdemeanor, such failure does not void the policy."[19] No provision was altered to bring the policy into compliance with Georgia's insurance laws. Accordingly, based on the allegations in the Amended Complaint, the insurance policies were valid and enforceable.

The Defendant National Union argues that the Plaintiffs suffered no harm because they got the insurance that they paid for and never made any claims for disability benefits. This may be true, but it cannot be determined as a matter of law from the face of the pleadings. Therefore, the case may proceed with discovery and the issues raised by the motion may be revisited at the summary judgment stage.

### IV. Conclusion

For these reasons, the Defendant National Union Fire Insurance Company's Motion to Dismiss [Doc. 79] is DENIED.

SO ORDERED, this 4 day of September, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[19] Id. at 600.