IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDY WILLIAMS, et al.,

    Plaintiffs,

      v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA
doing business as
National Union Fire Insurance
Company, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-309-TWT

**OPINION AND ORDER**

This case is about the marketing and sale of allegedly illusory insurance policies. It is before the Court on the Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment [Doc. 175], and the Defendant Catamaran Health Solutions, LLC's Motion for Summary Judgment [Doc. 174]. For the reasons set forth below, the Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment [Doc. 175] is GRANTED, and the Defendant Catamaran Health Solutions, LLC's Motion for Summary Judgment [Doc. 174] is GRANTED.

# I. Background

In 1999 or 2000, the Plaintiffs Randy Williams, Mary Williams, Larry Lake, and Linda Lake enrolled in the HealthExtras Benefit Program.[1] The Benefit Program was marketed, sold, and administered by the Defendants National Union Fire Insurance Company of Pittsburgh, PA and Catamaran Health Solutions, LLC.[2] The Benefit Program provided two types of disability insurance: accidental and permanent disability insurance and emergency accident and sickness medical expense insurance.[3] The Plaintiffs paid premiums on their insurance policies from 2000 until 2013.[4] On January 1, 2005, the Defendant National Union became the underwriter for the Permanent Disability Benefit.[5]

The Plaintiffs contend that the HealthExtras Benefit Program was illegal under Georgia law.[6] Additionally, the Plaintiffs claim that the Benefit Program was worthless because the Defendants never intended to pay out claims.[7] Specifically, the

---

[1]     Am. Compl. ¶¶ 36, 41.

[2]     Id. ¶ 19

[3]     Id. ¶ 49.

[4]     Id. ¶ 52.

[5]     Id. ¶ 50.

[6]     Id. ¶ 58.

[7]     Id. ¶ 19.

Plaintiffs assert that the majority of premium payments were used to cover marketing expenses or were converted into profits for the Defendants.[8] And, according to the Plaintiffs, the Defendants denied valid claims, forcing insureds to sue for their benefits.[9] Importantly, though, the Plaintiffs never claim that they personally filed a claim and were denied benefits. The Plaintiffs filed suit, asserting claims for unjust enrichment, breach of the duty of good faith and fair dealing, and violations of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act. The Defendants now move for summary judgment, primarily arguing that the Plaintiffs lack standing.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[10] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[11] The party seeking summary judgment must first identify grounds that

---

[8]   Id. ¶ 54.

[9]   Id. ¶ 56.

[10]   FED. R. CIV. P. 56(c).

[11]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

show the absence of a genuine issue of material fact.[12] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[13] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."

### III. Discussion

The Defendants contend that the Plaintiffs have not suffered a cognizable injury and thus lack standing. Under Article III, the jurisdiction of federal courts is limited to "Cases" and "Controversies."[14] To satisfy the case-or-controversy requirement, the plaintiff must establish standing.[15] This requires the plaintiff to show that: (1) he suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the complained of conduct of the defendant; and (3) it is likely that the requested relief will redress or remedy the alleged injury.[16] Here, the Defendants are specifically challenging the first

---

[12]     Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[13]     Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[14]     Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

[15]     Steel Co. v. Citizens For a Better Env., 523 U.S. 83, 102 (1998).

[16]     Id. at 103.

requirement: whether the Plaintiffs have suffered an injury in fact. An injury in fact is an invasion of a legally protected interest which is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."[17]

The Defendants first argue that the Plaintiffs cannot establish a cognizable injury based on the theory that the insurance policies were illegal or void. The Court agrees. As the Defendants correctly point out, the Court has already held that the insurance policies were valid and enforceable, even if the insurance policies violated Georgia insurance laws.[18] Specifically, the Court stated in its Order denying the Defendant National Union's Motion to Dismiss that "the insurance policies they received were not 'illusory.' To the contrary, if the Plaintiffs had been entitled to any benefits under the policies, the Defendants would have been legally obligated to provide them."[19] Accordingly, the Plaintiffs cannot demonstrate a cognizable injury based on the theory that the insurance policies were illegal or void.

Next, the Defendants contend that the Plaintiffs cannot establish standing based on the theory that the Defendants never intended to pay out claims. Because none of

---

[17]     Lujan, 504 U.S. at 560-61; Bischoff v. Osceola Cty., Fla., 222 F.3d 874, 883 (11th Cir. 2000).

[18]     See Order Denying Defendant National Union's  Motion to Dismiss [Doc. 98], at 7.

[19]     Id. at 5.

the Plaintiffs submitted claims, the crux of the Plaintiffs' standing argument is the contention that if they had submitted claims, the Defendants would have denied their claims and forced them to sue for their benefits. Thus, according to the Plaintiffs, they paid for insurance policies that were virtually worthless. But this argument is mere speculation. It is impossible to know whether the Defendants would have denied their claims. Indeed, when asked whether the Defendants would have paid out their claims if they had submitted them, several of the Plaintiffs testified that they would be speculating if they answered.[20] Moreover, as proof that the Defendants would not have automatically denied their claims, the Defendants has put forth evidence that National Union "paid over $8 million in benefits since 2005," and "[o]nly four claims have resulted in litigation or arbitration."[21] Consequently, the Plaintiffs cannot establish a concrete injury based on the theory that the Defendants never intended to pay out claims.

In other cases challenging this same insurance scheme, courts have reached analogous conclusions.[22] For example, in Giercyk v. National Union Fire Insurance

---

[20]     Statement of Undisputed Material Facts in Supp. of Def. National Union's Mot. for Summ. J. ¶¶ 50-51, 64.

[21]     Def. National Union's Mot. for Summ. J., at 16-17.

[22]     See, e.g., Waiserman v. National Union Fire Ins. Co. of Pittsburgh, Pa., 2:14-CV-00667-SVW, 2014 U.S. Dist. LEXIS 183642, at *5-6 (C.D. Cal. Oct. 24,

Co. of Pittsburgh, Pa., the District of New Jersey held that the plaintiffs lacked standing because the policies were enforceable under New Jersey law and "any suggestion that Defendants would not honor Plaintiffs' claims is mere speculation, and not a concrete harm."[23] Likewise, in Bush v. National Union Fire Insurance Co. of Pittsburgh, Pa., the Eastern District of North Carolina, reversing its previous order, held that because the insurance policies were valid under North Carolina law and the plaintiffs never made a claim under the policies, the plaintiffs could not demonstrate an injury in fact.[24]

In response, the Plaintiffs allege that they have demonstrated a cognizable injury under the Georgia RICO statute. Under this statute, "[i]t shall be unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any . . . personal property of any nature, including

---

2014); Campbell v. National Union Fire Ins. Co. of Pittsburgh, Pa., No.: 14-0892(RC), 2015 WL 5449791, at *8 (D.D.C. Sept. 16, 2015).  But see Williams v. National Union Fire Ins. Co. of Pittsburgh, Pa., 94 F. Supp. 3d 719, 726 (D.S.C. 2015) (holding that the court could not tell from the face of the pleadings that the plaintiffs were not harmed by the defendants' supposedly worthless insurance policies).

[23]     No. 13-6272, 2015 WL 7871165, at *5 (D.N.J.  Dec. 4, 2015).

[24]     No. 5:12-CV-113-FL, 2015 WL 5042874, at *10 (E.D. N.C. May 22, 2015).

money."[25] A "racketeering activity" – also called a "predicate act" – is the "commission of, [or] the attempt to commit . . . a 'crime which is chargeable by indictment' under one of forty categories of offenses."[26] But to have standing under Georgia's RICO Act, "a plaintiff must not only show a pattern of racketeering activity, but also 'a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [the plaintiff] purportedly sustained.'"[27]

Here, the Plaintiffs have failed to demonstrate that they suffered any injury caused by a RICO violation. First, the Plaintiffs' arguments regarding the RICO predicate acts of theft by taking and deception are without merit. The Plaintiffs state that the theft by taking "statute's language providing that theft may occur 'regardless of the manner in which the property is taken or appropriated' defeats NUFIC's argument that theft requires a disability claim to have been made and denied." No, it does not. The Plaintiff's property was not misappropriated by the Defendants. The Plaintiffs could have enforced their rights under the insurance policies if they had filed

---

[25]    O.C.G.A. § 16-14-4(a).

[26]    Wylie v. Denton, 323 Ga. App. 161, 164 (2013) (citing O.C.G.A. § 16-14-3(9)(A)(i)-(xli)).

[27]    Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357, 1381 (N.D. Ga. 2011) (quoting Schoenbaum Ltd. Co. v. Lenox Pines, LLC, 262 Ga. App. 457, 470 (2003)).

a claim, meaning they received what they paid for.[28] With regard to the theft by deception claim, the Plaintiffs contend that the Defendants deceived them by creating the false impression that legitimate claims would be paid out without litigation. But – once again – this argument is pure speculation. How could the Plaintiffs know whether the Defendants intended to pay out a claim if the Plaintiffs never filed a claim? Evidence that the Defendants operated the insurance scheme at a loss and disputed or denied several claims filed by other insureds does not fix the speculative nature of their argument.

Finally, the Plaintiffs' arguments under the predicate acts of mail and wire fraud are equally unavailing. The Plaintiffs argue that they were injured because the Defendants sent them notices that failed to state that claims would not be paid out unless the insured threatened litigation. However, like the Plaintiffs' previous arguments, this assertion is based on the conjecture that the Defendants would have denied the Plaintiffs' claims if they had filed them. The Plaintiffs, therefore, have

---

[28]     See Maio v. Aetna, Inc., 221 F.3d 472, 490 (3d Cir. 2000) (holding that a group of insureds could not establish a RICO injury absent any allegations that the defendants denied them benefits or failed to perform under the contract); Weaver v. Aetna Life Ins. Co., 370 Fed. App'x 822, 823 (9th Cir. 2010) (holding that the plaintiff lacked standing because she "did not allege that she made a claim for which payment was not received during the time that she paid premiums or that the policy for which she and other members of the purported class paid was worth less than they paid for it").

failed to adequately allege a RICO injury. Because the Plaintiffs have failed to create an issue of fact regarding whether they have suffered an injury, the Court lacks subject matter jurisdiction. Thus, the Defendants' Motions for Summary Judgment should be granted.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment [Doc. 175] and the Defendant Catamaran Health Solutions, LLC's Motion for Summary Judgment [Doc. 174].

SO ORDERED, this 24 day of February, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge